DOWNEY, Judge.
Michael Stanley Nelson was convicted of the premeditated murder of his wife, Linda Nelson, by drowning on September 12, 1979, and with attempted premeditated murder of Linda Nelson by poison on August 30, 1979. From a judgment and sentence of life imprisonment and a consecutive thirty year term of imprisonment Nelson has perfected this appeal.
On September 12, 1979, Nelson’s wife, Linda, drowned in the bathtub of her home in Delray Beach. Nelson claimed that, when he returned home on the afternoon of September 12th, he found his wife face down in a bathtub of water. He tried to resuscitate her without success and then called the paramedics. Although Nelson said he found an empty valium bottle near her body, an autopsy showed only therapeutic quantities of valium present in the deceased’s body, and the cause of death was determined to be drowning.
Nelson was eventually charged with premeditated murder in the drowning and in a second count with attempted murder by poison. The evidence adduced was sufficient for the jury to find that Linda had been drowned in the bathtub. She had bruises and other marks on her head and face consistent with being caused by human hands and unusually long strings of her hair were found in the clear bathtub water by one of the witnesses. The bathroom was in a state of disarray; while the floor was dry, there were several half-wet bathmats behind the bathroom door. Nelson admitted to an investigating officer that he could have gotten physical with Linda that day trying to get her to straighten up and snap out of her alleged illness. He stated he was the equivalent to a Brown Belt in Karate; he was from a long line of warriors; and he was comfortable with killings. These and other statements militated against the accidental drowning theory. Nelson was described as being very calm, cool, and collected on the evening of Linda’s death. On that very evening he called Linda’s boss and made arrangements to come into the office the next day to discuss Linda’s death benefits. Nelson was aware that he was the beneficiary of'a large life insurance policy on Linda’s life. He also evidenced great concern that Linda’s first husband might participate in her estate.
With reference to the count involving the attempted murder by poisoning, Dr. Weems testified he attended Linda in the hospital on August 30, 1979. Among other things, she was hyperventilating, drooling, and complaining of muscle pain. Some of her symptoms were consistent with poisoning. The juxtaposition of drooling and hyperventilating was unusual. Dr. Ralph Tanz, a pharmocologist, testified that the symptoms exhibited by Linda on August 30, 1979, were consistent with aconitine poison; he knew of no other chemical that would produce such symptoms. In further support of this charge, it was shown that Nelson purchased quantities of a chemical known as aconitine, which is a poisonous chemical, very toxic to the heart. Its ostensible use, according to Nelson, was for a paint he was experimenting with to prevent barnacles on boat bottoms. There was evidence that made this story suspect.
On the attempted murder count, the State introduced similar fact evidence regarding Nelson’s conduct with his first wife, Sherrie Braswell. There was a striking similarity between the illnesses and symptoms suffered by the two women when living with Nelson. The medical evidence showed, for example, that the hospital admissions of the two women reflected both evidencing the same symptoms, nerv *1225 ousness, heart flutter, numbness, tingling and drooling, all of which were shown to be consistent with aconitine poisoning. It was shown that Nelson purchased a large life insurance policy on his and Sherrie’s lives before they were married. Prior to the purchase of that policy Sherrie had never experienced any of the distress symptoms mentioned above. However, thereafter on several occasions she started having nausea, cramps, cardiac arrythmia, numbness, and tingling all over, generally related to occasions when Nelson would furnish her pills. The symptoms required that she be treated at a hospital. Eventually, she canceled the life insurance policy against Nelson’s wish and never had any further such distressful episodes.
Nelson’s first point on appeal contends that the admission of the similar fact evidence was error, since it bore no relevancy to the crimes charged in the present case. On the contrary, we hold that the similar facts were relevant to the charge contained in Count II, attempted murder of Linda Nelson by poison. It was probative of a common design and of his motive for wanting to do away with both women. While the time span between the two attempts is substantial, ten years, the close similarity of symptoms evidenced by the two women, Nelson’s intimate proximity to the intended victims, and the inference that aconitine poison was used renders the time span less a problem. We hold that the evidence relative to Sherrie Nelson incidents was admissible under Section 90.-404(2)(a), Florida Statutes (1979), as proof on the count charging attempted first degree murder of Linda Nelson.
Nelson also contends reversible error was committed by the trial court in denying his motion to sever the two counts. The motion for severance was heard prior to trial in conjunction with Nelson’s objection to the admission of the similar fact evidence. At that hearing counsel for Nelson advised the court that, if the court overruled Nelson’s objection to the similar fact evidence, his motion to sever lost its purpose and he would just as well go to trial on both counts. Since we hold counsel waived his motion for severance, we set out at length the colloquy involved:
MR. LUBIN: Okay. I would like to make the argument — well, I would like to make the argument and preserve that point if you rule that it comes in, with my client’s permission, my decision is made but of course with my client’s permission, I am going to withdraw it and say, “Let’s go to trial with them together.”
If it were error to admit the Williams Rule, it wouldn’t matter whether I got them severed or not. So I would just like to make those arguments and let the Court rule.
THE COURT: Okay.
[[Image here]]
(LUBIN) I ask that you sever them, but again, not to mislead the Court, if you allow in the Braswell testimony or if the Court of Appeals does, my inclination is to go with both of them at the same time. THE COURT: All right. I am inclined not to grant the severance.
Since we hold that defendant’s counsel waived the motion for severance in view of the court’s ruling on the similar fact evidence, we need not treat the merits of the severance motion.
Nelson’s other points have been giv-. en serious consideration and found to be without merit. No error has been shown in the court’s refusal to recuse defendant’s counsel, Mr. Lubin. The motion was made by the State, not by Nelson. Furthermore, the trial court seriously considered any possible ramifications to Nelson from Lubin’s conduct and specifically advised Nelson of those possibilities. Nevertheless, in the face of that advice, Nelson, who hired Lu-bin as private counsel, expressly waived any objection to Lubin’s continuing in the case.
There was no error in denying Nelson’s motion for discharge based on an alleged violation of his speedy trial rights. Nelson’s counsel waived speedy trial, and Nelson’s presence was not required. State *1226 v. Abrams, 350 So.2d 1104 (Fla. 4th DCA 1977).
Finally, the conglomeration of alleged ev-identiary errors does not require reversal. We hold the evidence involved was either relevant, not objected to, or harmless error.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.
ANSTEAD, C.J., and DELL, J., concur.